**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PFIZER INC, *et al.*,          ) | |
|          ) | |
| Plaintiffs/Counter-Defendants,    ) | |
|          ) | |
| v.          ) | Civil Action No.:  08 CV 02018 LAK |
|          ) | |
| MATHEW I. GELFAND, M.D.,    ) | |
|          ) | |
| Defendant/Counter-Plaintiff.    ) | |
|          ) | |

**DEFENDANT/COUNTER-PLAINTIFF'S COUNTERCLAIMS**

**JURY TRIAL DEMANDED**

Defendant and Counter-Plaintiff Mathew I. Gelfand, M.D., ("Dr. Gelfand"), by and through his undersigned counsel, hereby files his counterclaims against Plaintiffs and Counter-Defendants Pfizer Inc. ("Pfizer"), Robert Jarvik ("Jarvik"), and Jarvik Heart, Inc. ("JHI") (together, "Counter-Defendants"), and states as follows:

1.     This is an action by Dr. Gelfand against Pfizer, Jarvik, and JHI for infringement of United States Patent No. 5,837,688 (hereinafter, the "'688 Patent").

**PARTIES, VENUE, AND JURISDICTION**

2.     Dr. Gelfand is a practicing physician, licensed by the State of New York, with a specialty in internal medicine, hematology, and blood circulation. Dr. Gelfand is a citizen of New York, with an address at 245 Fairway Road, Lido Beach, New York, New York 11561.

3.     Pfizer is a corporation organized and existing under the laws of the State of Delaware with a principal place of business at 235 East 42nd Street, New York, New York 10017.

4. Jarvik is world-renown medical engineer, is well-known among physicians who specialize in treating cardiovascular disease. Jarvik resides in New York, New York, and serves as President and Chief Executive Officer of JHI. Jarvik has never been, and is not now, licensed to practice medicine in any state and he is not a cardiologist.

5. JHI is a New York corporation located at 333 West 52nd Street, New York, New York 10019, in business to promote treatment of cardiovascular disease, including coronary heart disease, in humans.

6. This action arises under the patent laws of the United States, Title 35, United States Code. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

7. Venue is proper in this District as to all Counter-Defendants pursuant to 28 U.S.C. § 1400(b) and, as to Counter-Defendants Pfizer and JHI, pursuant to 28 U.S.C. § 1391(b).

## CONDITIONS PRECEDENT

8. Any and all conditions precedent for bringing or maintaining this cause of action have been satisfied by Dr. Gelfand, or are waived or excused by Counter-Defendants, and each of them.

## FACTS

9. On application Serial Number 758,615, filed by Dr. Gelfand on November 27, 1996, the United States Patent and Trademark Office issued the '688 Patent, entitled "Use of Thrombolytic Reagent for Prevention of Vascular Disease," on November 17,

1998. A copy of the '688 Patent is attached hereto as Exhibit A and incorporated herein as if stated in full.

10. Pursuant to the '688 Patent, Dr. Gelfand owns and controls the right to preclude others, including Pfizer, Jarvik, and JHI, from practicing, from selling, and from inducing the sale of a process by which a thrombolytic reagent with fibrinolytic activity is chronically administered to humans in low doses over long periods of time to treat vascular disease, including cardiovascular disease and cerebral vascular disease, *e.g.*, coronary heart disease, myocardial infarction or heart attack, and stroke.

11. The '688 Patent defines such thrombolytic reagents as drugs that reduce blood clots and, therefore, induce angiogenesis, *i.e.*, "drugs that act on the endogenous fibrinolytic system by converting plasminogen to the potent proteolytic enzyme plasmin. Plasmin in turn degrades fibrin clots and other plasma proteins."

12. The thrombolytic reagents that can be used in the practice of the '688 Patent includes "thrombolytic reagents such as tissue plasminogen activator" (t-PA) and, more broadly, all "delivery systems that provide for long-term sustained release of thrombolytic reagents, such as t-PA, in the blood, which is effective as a means for preventing the development of vascular disease."

13. As stated in the '688 Patent:

> The object of the invention is the prevention or dissolving of clots as they form in the vascular system of the treated patient. In accordance with the present invention, the object can be achieved through the use of t-PA preparations designed for sustained release of t-PA into the bloodstream of a patient over prolonged periods of time.

14. At the time that the '688 Patent became effective, it was generally accepted in the field of medicine: (a) that the human fibrinolytic system basically consists

3

of a balance between clotting factors, such plasminogen activator inhibitor type 1 ("PAI-1"), and anti-clotting factors, such as t-PA; and (b) that an increase in t-PA activity in the blood and/or endothelial cells results in a decrease of PAI-1 activity therein as well.

15. On or about December 18, 1996, the United States Food and Drug Administration ("FDA") approved Pfizer's application for the sale of a statin product, the calcium salt of atorvastatin or "atorvastatin calcium," which compound Pfizer thereafter has sold and sells, and offered and offers for sale, in interstate commerce as Lipitor®. In 2002, FDA approved Pfizer to market doses of Lipitor® at doses as low as 10mg per day.

16. On September 30, 2003, Pfizer submitted to FDA a Supplemental New Drug Application ("SNDA") for Lipitor® "based on the Anglo-Scandinavian Cardiac Outcomes Trial (ASCOT) lipid lowering arm results."

17. Dr. Gelfand first received the SNDA on January 25, 2008, after a three-year delay from FDA on his Freedom of Information Act request of September 26, 2005.

18. In its September 2003 SNDA for Lipitor®, Pfizer stated that the ASCOT lipid-lowering test results "support[] a new indication for the prevention of cardiovascular disease in patients without clinically evident coronary heart disease."

19. Pfizer further stated that the ASCOT lipid-lowering test results showed that Lipitor® at 10mg tablets conferred "additional protection" against coronary heart disease. Pfizer wrote to FDA:

> On September 2, 2002, the Data Safety Monitoring Board (DSMB) of ASCOT proposed to the Steering Committee that the double-blind lipid-lowering arm of ASCOT be terminated due to a highly significant reduction in the primary endpoint of coronary heart disease and a significant reduction in stroke incidence in those patients receiving Lipitor compared to a placebo. The magnitude of the benefit exceeded the predefined stopping rule for this part of the trial. The ASCOT Steering

Committee accepted this recommendation on October 4, 2002 and a decision to close this section of the study was taken.

20. Since at least 2003, physicians treating patients for risks associated with cardiovascular and/or cerebral vascular disease, including coronary heart disease and stroke, have known that blood clotting is the major risk factor for the occurrence of heart attack and stroke and that vascular angiogenesis is the major risk prevention factor for the occurrence of heart attack and stroke.

21. Since at least 2003, medical literature published in the United States has explored and extolled the benefits of statin compounds, including Lipitor®, for their benefit as a chronically administered or sustained-release thrombolytic and fibrinolytic reagent.

22. The thrombolytic and fibrinolytic properties of Lipitor® are the only medically reasonable explanation for the statements that Pfizer made to FDA in Pfizer's September 2003 SNDA to FDA about the effects of Lipitor® beyond cholesterol-lowering.

23. At some time after September 2003, Pfizer began a highly successful national marketing campaign for the sale of Lipitor® for its effect as a chronically administered or sustained-release thrombolytic and fibrinolytic reagent. In 2006 alone, Americans filled more than 79 million prescriptions for Lipitor®, accounting for roughly $14 billion in domestic sales of Lipitor®.

24. As early as September 2003, and as a material part of its national campaign to promote Lipitor®, Pfizer actively induced the infringement of the '688 Patent by inducing physicians in the United States to prescribe Lipitor®, and patients to use Lipitor®, for its effects beyond cholesterol-lowering, *i.e.*, as a chronically

administered thrombolytic reagent in the treatment or prevention of cardiovascular disease, including heart attack and stroke.

25. In 2004, Pfizer obtained approval from FDA and began to manufacture, sell, and offer for sale a compound drug with trade name Caduet®, a drug that combines Pfizer's atorvastatin calcium (Lipitor®) with Pfizer's amlodipine product (Norvasc®) to treat cardiovascular disease.

26. In 2004, the American Journal of Hypertension ("AJH") reported:

> Data from the recent Anglo-Scandinavian Cardiac Outcomes Trial (ASCOT) support the view that statins protect hypertensive patients from end-organ damage, not only through cholesterol reduction but also through other pathways. These include a direct modulation of the endothelial function, as well as an interaction with the fibrinolytic activity. In this regard, evidence from in vitro studies indicate [*sic*] that statins positively affect the fibrinolytic system of cultured smooth muscle cells as well as endothelial cells.

(footnotes omitted). The AJH report is attached hereto as Exhibit B.

27. The AJH report concluded in material part:

(a) that "amlodipine monotherapy . . . significantly increased t-PA activity" in the human vascular system;

(b) that "atorvastatin monotherapy (ie, a significant decrease in PAI-1 activity and an increase in t-PA activity) confirm the findings of some in vitro and in vivo studies"; and

(c) that "the combination of amlodipine and atorvastatin improved the fibrinolytic balance more than the single monotherapy."

28. On August 5, 2005, Dr. Gelfand put Pfizer on notice that its manufacture, use, and sale of Lipitor® infringes on the '688 Patent. In his letter, Dr. Gelfand offered Pfizer the opportunity to license the '688 Patent.

29. On September 14, 2005, Pfizer responded to Dr. Gelfand's notice as follows:

> Lipitor has no indications that are dependent upon anti-thrombotic or fibrinolytic activity and there is no plan to pursue such an indication. The Pfizer team therefore concluded that [the '688 Patent] would have minimal value to Pfizer and there was no interest in further discussing this licensing opportunity.

The September 14, 2005, Letter from Ann C. Barry, Ph.D., Pfizer's Director of Licensing & Development, is attached hereto as Exhibit C ("Barry Letter"), and is incorporated herein as if stated in full.

30. Through the Barry Letter, Pfizer intentionally misrepresented its promotion of Lipitor®, its September 2003 SNDA to FDA for Lipitor®, and its plans for promoting Lipitor® and Caduet®.

31. Dr. Gelfand relied on Pfizer's misrepresentations to his detriment by not filing this suit prior to his receipt in January 2008 of Pfizer's September 2003 SNDA for Lipitor®. The SNDA reveals Pfizer's lie in the Barry Letter, Pfizer's bad faith towards Dr. Gelfand from as early September 2005 (if not before), and Plaintiffs/Counter-Defendants' willful infringement of the '688 Patent since September 2005.

32. On April 13, 2006, Jarvik entered into a two-year contract by which Jarvik is to receive $550,000 in the first year and $800,000 in the second year in return for his promotion of Lipitor®, including for its effects beyond cholesterol-lowering, *i.e.*, as a chronically administered thrombolytic reagent in the treatment or prevention of cardiovascular disease, including heart attack and stroke.

33. On information and belief, Jarvik has all or nearly all sums due under the initial two-year contract with Pfizer.

34.     In his contract with Pfizer, Jarvik reserved control of his association with Pfizer's promotion of Lipitor®.  Jarvik reserved "the right, in [his] discretion,  to refuse to have a statement attributed to [Jarvik] if [he] believes in good faith that such statement is untrue."

35.     Jarvik has exercised that control.  Jarvik and JHI have stated publicly:

> I have the training, experience, and medical knowledge to understand the conclusions of the extensive clinical trials that have been conducted to study the safety and effectiveness of Lipitor. Also, Pfizer submits advertising concepts in advance to the FDA for review and comment. The statements included in the ads fairly represent the scientific truth about Lipitor, which the public has a right to know, and which Pfizer is entitled to teach.
>
> I accepted the role of spokesman for Lipitor because I am dedicated to the battle against heart disease . . . . I believe the process of educating the public is beneficial to many patients and I am pleased to be part of an effort to reach them.
>
> I am not a celebrity. I am a medical scientist specializing in advanced technology to treat heart failure who understands that no one in his or her right mind would want an artificial heart if it could be avoided with preventive medicine.

36.     For its part in its contract with Jarvik, Pfizer reserved the right to promote Lipitor® in ways that satisfies Jarvik:  "In the event [Pfizer], in its sole discretion, requests approval from [Jarvik] with respect to any materials or any particular element, [Jarvik] shall provide comments, if any, in writing, within twenty-four (24) hours of [Jarvik's] receipt of such materials or element.  In connection with the preceding sentence, [Jarvik] shall have the right to review all press releases prior to the general commercial distribution of such releases."

37.     Pfizer prepared, and Jarvik approved, either tacitly or in writing, those advertisement that feature Jarvik's endorsement and promotion of Lipitor® for its effects

8

beyond cholesterol-lowering, *i.e.,* as a chronically administered thrombolytic reagent in the treatment or prevention of cardiovascular disease, including heart attack and stroke.

38.   The benefits that Jarvik has received by his promotion of Lipitor® for its effects beyond cholesterol-lowering *i.e.,* as a chronically administered thrombolytic reagent in the treatment or prevention of cardiovascular disease, including heart attack and stroke, include heightened medical, media, and financial attention for JHI.

39.   Since not later than April 2006, Pfizer and/or Jarvik have, directly and indirectly, urged physicians and their patients at risk for heart attack and/or stroke to use Lipitor® for its effects beyond cholesterol-lowering, *i.e.,* as a chronically administered thrombolytic reagent in the treatment or prevention of cardiovascular disease, including heart attack and stroke.  Such inducements include, without limitation:

(a)   On October 15, 2006, Pfizer's President's J. Patrick Kelly was quoted in The New York Times: "By taking any dose of Lipitor, you will reduce the risk of a cardiovascular event faster and to a greater degree than you will with any other medicine."

(b)   On September 7, 2006, the Boston Globe reported that Pfizer has sent thousands of sale representatives to convince physicians that Lipitor® is more effective in the prevention of heart disease than any other or generic statin.

(c)   Beginning in 2006, Counter-Defendants began to run advertisement LP27879-I, and others like it, in major national newspapers.  The newspaper advertisements features Jarvik, who extols Lipitor® for its effects beyond cholesterol-lowering, *i.e.,* as a chronically administered thrombolytic reagent in the treatment or prevention of cardiovascular disease, including heart attack and stroke.

(d) Beginning in 2006, Counter-Defendants began to run television and internet or web advertisements for Lipitor®. These advertisements feature Jarvik extolling Lipitor® for its effects beyond cholesterol-lowering, *i.e.,* as a chronically administered thrombolytic reagent in the treatment or prevention of cardiovascular disease, including heart attack and stroke.

40. From time to time since September 2003, Pfizer has directly and indirectly infringed on the '688 Patent by offering for sale, selling, and inducing doctors and their patients to use Lipitor® and Caduet® as a chronically administered thrombolytic reagent for the prevention of vascular disease, including without limitation as a chronically administered reagent for reducing or otherwise affecting blood clotting or the fibrinolytic system in patients at risk for heart disease and/or stroke.

41. From time to time since April 13, 2006, Jarvik, for his own benefit and for the benefit of JHI, has directly and indirectly infringed on the '688 Patent by offering for sale, selling, and inducing doctors and their patients to use Lipitor® as a chronically administered thrombolytic reagent for the prevention of vascular disease, including without limitation as a chronically administered reagent for reducing or otherwise affecting blood clotting or the fibrinolytic system in patients at risk for heart disease and/or stroke.

42. From time to time since April 13, 2006, JHI has, through Jarvik, directly and indirectly infringed on the '688 Patent by offering for sale, selling, and inducing doctors and their patients to use Lipitor® as a chronically administered thrombolytic reagent for the prevention of vascular disease, including without limitation as a

chronically administered reagent for reducing or otherwise affecting blood clotting or the fibrinolytic system in patients at risk for heart disease and/or stroke.

43. On February 25, 2008, Dr. Gelfand made an attempt to resolve this dispute with Counter-Defendants by sending a written request for a meeting to Jarvik and to Allen Waxman, the General Counsel of Pfizer.

44. In response to Dr. Gelfand's request for a meeting, Counter-Defendants filed the complaint for declaratory judgment that commenced this action.

### FIRST CLAIM FOR RELIEF:
### COUNTER-DEFENDANTS' INFRINGEMENT OF THE '688 PATENT
### IN VIOLATION OF 35 U.S.C. 271(a)

45. Dr. Gelfand realleges paragraphs 1 through 44 above as if fully set forth herein.

46. The '688 Patent is valid and enforceable, and has been since at least 2003 and throughout the period from April 13, 2006, to date.

47. In violation of 35 U.S.C. §271(a), Counter-Defendants, and each of them, have infringed and violated the '688 Patent by selling and offering to sell Lipitor® within the United States -- without authority of Dr. Gelfand -- for Lipitor®'s effects beyond cholesterol-lowering, *i.e.,* as a chronically administered thrombolytic reagent in the treatment or prevention of cardiovascular disease, including heart attack and stroke.

48. In violation of 35 U.S.C. §271(a), Counter-Defendants, and each of them, have infringed and violated the '688 Patent by selling and offering to sell Caduet® within the United States -- without authority of Dr. Gelfand -- for Caduet®'s effects beyond cholesterol-lowering, *i.e.,* as a chronically administered thrombolytic reagent in the treatment or prevention of cardiovascular disease, including heart attack and stroke.

49. Pfizer infringed the '688 Patent in bad faith and willfully, including through Pfizer's misrepresentations in the Barry Letter of September 2003.

50. As a result of Counter-Defendants' infringement of the '688 Patent, Dr. Gelfand has suffered substantial damages within the meaning of 35 U.S.C. §284.

51. Dr. Gelfand will be irreparably harmed if Counter-Defendants are not enjoined from infringing the '688 Patent.

### SECOND CLAIM FOR RELIEF:
### COUNTER-DEFENDANTS' ACTIVE INDUCING INFRINGEMENT OF THE '688 PATENT
### IN VIOLATION OF 35 U.S.C. 271(b)

52. Dr. Gelfand realleges paragraphs 1 through 44 above as if fully set forth herein.

53. The '688 Patent is valid and enforceable, and has been since at least 2003 and throughout the period April 13, 2006, to date.

54. In violation of 35 U.S.C. §271(b), Counter-Defendants, and each of them, have actively induced doctors to infringe the '688 Patent by inducing such doctors to use, prescribe, and otherwise require their patients to purchase Lipitor® within the United States -- without authority of Dr. Gelfand – to secure Lipitor®'s effects beyond cholesterol-lowering, *i.e.,* as a chronically administered thrombolytic reagent in the treatment or prevention of cardiovascular disease, including heart attack and stroke.

55. In violation of 35 U.S.C. §271(b), Counter-Defendants, and each of them, have actively induced doctors to infringe the '688 Patent by inducing such doctors to use, prescribe, and otherwise require their patients to purchase Caduet® within the United States -- without authority of Dr. Gelfand – to secure Caduet®'s effects beyond

cholesterol-lowering, *i.e.,* as a chronically administered thrombolytic reagent in the treatment or prevention of cardiovascular disease, including heart attack and stroke.

56. Pfizer infringed the '688 Patent in bad faith and willfully, including through Pfizer's misrepresentations in the Barry Letter of September 2003.

57  As a result of Counter-Defendants' infringement of the '688 Patent, Dr. Gelfand has suffered substantial damages within the meaning of 35 U.S.C. §284.

58. Dr. Gelfand will be irreparably harmed if Counter-Defendants are not enjoined from infringing Dr. the '688 Patent.

**THIRD CLAIM FOR RELIEF:**
**COUNTER-DEFENDANT PFIZER'S INFRINGEMENT OF THE '688 PATENT IN VIOLATION OF 35 U.S.C. 271(e)(2)(A)**

59. Dr. Gelfand realleges paragraphs 1 through 44 above as if fully set forth herein.

60. The '688 Patent is valid and enforceable, and has been since at least 2003 and throughout the period April 13, 2006, to date.

61. Pfizer's SNDA of September 2003 sought authority from FDA to promote Lipitor® for its effects beyond cholesterol-lowering, *i.e.,* as a chronically administered thrombolytic reagent in the treatment or prevention of cardiovascular disease, including heart attack and stroke.

62. Pfizer's NDA of 2004 sought authority from FDA to promote Caduet® for its effects beyond cholesterol-lowering, *i.e.,* as a chronically administered thrombolytic reagent in the treatment or prevention of cardiovascular disease, including heart attack and stroke.

63. Pfizer's SNDA of September 2003 constitutes an "application . . . described by section 505(b)(2)" of the Federal Food, Drug, and Cosmetic Act "for a drug claimed" in the '688 Patent or "the use of which is claimed" in the '688 Patent, all within the meaning of 35 U.S.C. §271(e)(2)(A).

64. Pfizer's NDA of 2004 constitutes an "application . . . described by section 505(b)(2)" of the Federal Food, Drug, and Cosmetic Act "for a drug claimed" in the '688 Patent or "the use of which is claimed" in the '688 Patent, all within the meaning of 35 U.S.C. §271(e)(2)(A).

65. In submitting its SNDA of September 2003 to FDA, Pfizer infringed the '688 Patent in violation of 35 U.S.C. §271(e)(2)(A).

66. In submitting its NDA of 2004 to FDA, Pfizer infringed the '688 Patent in violation of 35 U.S.C. §271(e)(2)(A).

67. Counter-Defendant Pfizer infringed the '688 Patent in bad faith and willfully, including through Pfizer's misrepresentations in the Barry Letter of September 2003.

68. As a result of Plaintiffs/Counter-Defendants' infringement of the '688 Patent, Dr. Gelfand has suffered substantial damages within the meaning of 35 U.S.C. §284.

69. Dr. Gelfand will be irreparably harmed if Plaintiffs/Counter-Defendants are not enjoined from infringing the '688 Patent.

**FOURTH CLAIM FOR RELIEF:**
**COUNTER-DEFENDANT PFIZER'S INFRINGEMENT OF THE '688 PATENT**
**IN VIOLATION OF 35 U.S.C. 271(a)**

70. Dr. Gelfand realleges paragraphs 1 through 44 above as if fully set forth herein.

71. The '688 Patent is valid and enforceable, and has been since at least 2003 and throughout the period from April 13, 2006, to date.

72. In violation of 35 U.S.C. §271(a), Pfizer has infringed and violated the '688 Patent by making Lipitor® within the United States -- without authority of Dr. Gelfand -- for Lipitor®'s effects beyond cholesterol-lowering, *i.e.,* as a chronically administered thrombolytic reagent in the treatment or prevention of cardiovascular disease, including heart attack and stroke.

73. In violation of 35 U.S.C. §271(a), Pfizer has infringed and violated the '688 Patent by making Caduet® within the United States -- without authority of Dr. Gelfand -- for Caduet®'s effects beyond cholesterol-lowering, *i.e.,* as a chronically administered thrombolytic reagent in the treatment or prevention of cardiovascular disease, including heart attack and stroke.

74. Pfizer infringed the '688 in bad faith and willfully, including through Pfizer's misrepresentations in the Barry Letter of September 2003.

75. As a result of Pfizer's infringement of the '688, Dr. Gelfand has suffered substantial damages within the meaning of 35 U.S.C. §284.

76. Dr. Gelfand will be irreparably harmed if Pfizer is not enjoined from infringing the '688 Patent.

**WHEREFORE,** Dr. Gelfand requests the following relief from Counter-Defendants, and each of them, as follows:

A.    a judgment of the Court for damages against Counter-Defendants, jointly and severally, adequate to compensate Dr. Gelfand for Counter-Defendants' infringement of the '688 Patent, but not less than one percent (1%) of the net sales of Lipitor® for each year commencing April 13, 2006 through the expiration of the '688 Patent plus 30 months (to compensate for time lost to Dr. Gelfand by Pfizer's misrepresentations in the Barry Letter), all as allowed by 35 U.S.C. §284;

B.    a judgment of the Court for damages against Counter-Defendants, jointly and severally, adequate to compensate Dr. Gelfand for Counter-Defendants' infringement of the '688 Patent, but not less than one percent (1%) of the net sales of Caduet® for each year commencing April 13, 2006 through the expiration of the '688 Patent plus 30 months (to compensate for time lost to Dr. Gelfand by Pfizer's misrepresentations in the Barry Letter), all as allowed by 35 U.S.C. §284;

C.    an order of this Court preliminarily and then permanently enjoining Pfizer from making Lipitor® and/or Caduet® until the expiration of the '688 Patent plus 30 months (to compensate for time lost to Dr. Gelfand by Pfizer's misrepresentations in the Barry Letter), all as allowed by 35 U.S.C. §283;.

D.    an order of this Court preliminarily and then permanently enjoining Counter-Defendants from selling, offering for sale, or inducing the use of Lipitor® and/or Caduet® until the expiration of the '688 Patent plus 30 months (to compensate for time lost to Dr. Gelfand by Pfizer's misrepresentations in the Barry Letter), all as allowed by 35 U.S.C. §283;.

  E.  Treble damages as allowed by 35 U.S.C. §284;

  F.  Attorneys' fees in this action pursuant to 35 U.S.C. § 285;

  G.  Costs and expenses in this action; and

  H.  Such further and other relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

Dr. Gelfand hereby demands trial by jury as to all issues triable as of right by jury.

Dated:  March 24, 2008    Respectfully Submitted,
Bethesda, Maryland

**THE ROTBERT LAW GROUP, LLC**

  /s/ Mitchell J. Rotbert
Mitchell J. Rotbert
Bar No. MR-0484
7315 Wisconsin Avenue
Suite 1250 West
Bethesda, Maryland 20814
Phone: (240) 333-4517
Fax:    (301) 251-4032
mrotbert@rotbertlaw.net

*Attorney for Defendant/Counter-Plaintiff Mathew I. Gelfand, M.D.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 24th day of March, 2008, I caused a copy of the foregoing **DEFENDANT/COUNTER-PLAINTIFF MATHEW I. GELFAND'S, M. D., COUNTERCLAIMS** to be delivered via ECF filing and by United States Mail, postage prepaid, to:

David G. Elbert
INGRAM YUZEK GAINEN CARROLL & BERTOLOTTI, LLP
250 Park Avenue
New York, New York 10177
*Counsel for Plaintiffs*

Rudolf E. Hutz
Jeffrey B. Bove
Mary W. Bourke
William E. McShane
CONNOLLEY BOVE LODGE & HUTZ LLP
1007 Noth Orange Street
Wilmington, DE 19899
*Of Counsel for Plaintiffs*

                                        /s/ Mitchell J. Rotbert
                                        Mitchell J. Rotbert